IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RANDY NOLAN GIBBS and ) | |
| KATHLEEN GIBBS ) | |
| ) | Case No. 20-20010 |
| Debtors. ) | Chapter 7 |
| ) | |
| ) | |
| DANIEL J. CASAMATTA, ) | |
| ACTING UNITED STATES TRUSTEE, ) | Adversary No. 20-2007 |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| RANDY NOLAN GIBBS and ) | |
| KATHLEEN ANN GIBBS, ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

This adversary comes before the Court on the Complaint filed by the United States Trustee ("Trustee") against Randy and Kathleen Gibbs ("Defendants" or "Debtors")[1]. Plaintiff argues that Debtors should be denied a discharge pursuant to 11 U.S.C. §§727(a)(2)(A), (a)(2)(B) and (a)(4). A trial was held on November 8, 2021, and the Court took the matter under advisement. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J). This Memorandum Opinion contains my Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure as made applicable to this matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For all the reasons set forth below, the Court finds insufficient evidence to meet

---

[1] Mr. Gibbs passed away during the pendency of this adversary proceeding and the Court entered an order on March 14, 2022, substituting Mrs. Gibbs in his place. Doc. # 95.

Trustee's burden as to the claims and will therefore grant Debtors a discharge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Debtors operated two businesses, Gibb's Company, Inc. ("Gibbs Company") and RKC Enterprises, LLC ("RKC"). Kathy Gibbs was owner of record of Gibbs Company and Randy Gibbs was Vice President and General Manager. In relation to Gibbs Company, Debtors entered into a franchise agreement with Ram Jack Systems Distribution, LLC which provided patented foundation repair techniques. In September 2018, a lawsuit for failure to make payments ensued against Debtors and a settlement agreement was reached with Ram Jack in the amount of $65,000. In October 2018, a lawsuit was also filed against Gibbs Company by company employees which resulted in a settlement entered in April 2019 in which Gibbs Company was to pay $41,000 to the employee class. RKC managed mini-storage units located at 4725 E. Meyer Industrial Dr., Columbia, MO, which Debtors personally owned (the "Commercial Property"). In February 2019, Mr. Gibbs transferred a carport dealership contract from Gibbs Company to RKC.

On November 11, 2019, Debtors contracted to sell the Commercial Property for $525,000. The sale closed on December 30 and some of the proceeds were used to pay off loans from Central Bank on which Gibbs Company was debtor and Randy and Kathy Gibbs were guarantors. Thereafter, the balance from the sale of the Commercial Property in the amount of $132,007.40 was deposited into a Landmark Bank Account held by RKC.

Also in November 2019, Debtors entered into a contract with Atterbury Auction and Realty Co. to conduct an auction of personal property located at the Commercial Property that was under contract to be sold. Debtors provided a list of property to be sold at auction which included both property owned by Gibbs Company and several items of their own personal property. The auction

2

was conducted on January 14, 2020, four days after Debtors filed the bankruptcy petition. Personal property of the Debtors, not owned by Gibbs Company, sold at auction included a Ford Mustang ($5,500); a horse trailer ($220); a Ford truck ($2,425); a Box Trailer ($340); a Ford F250 truck ($925); and abandoned property from the storage units on the commercial property ($1,298). Equipment owned by Gibbs Company was also sold at auction and Debtors received a single check in the approximate amount of $108,964.50 for all property sold at auction. Debtors deposited the auction proceeds into a bank account with United Credit Union ("UCU") on January 28, 2020. Debtors disclosed the auction to the Chapter 7 Trustee at the March 10, 2020 Meeting of Creditors.

Debtors began meeting with counsel to discuss bankruptcy options and winding down the Gibbs Company in April 2019. They filed a Chapter 7 bankruptcy petition on January 10, 2020, and filed initial Schedules and a Statement of Financial Affairs ("SOFA") on February 4, 2020. Following a meeting of creditors on March 10, Debtors filed amended Schedules on March 19 and an amended SOFA on March 27. On April 8, Debtors filed second amended Schedules and on April 27 a second amended SOFA. Thereafter, they filed third amended Schedules and fourth Amended Schedules on June 1 and August 19, as well as a third amended SOFA.

The Trustee contends that Debtors should be denied a discharge pursuant to §727(a)(4) for knowingly and fraudulently making a false oath and failing to disclose a bank account; transfers from the pre-petition sale of the Commercial Property to Gibbs Company and personal property sold at a post-petition auction on their Schedules and Statement of Financial Affairs and that Debtors made false statements at the meeting of creditors. Debtors deny these allegation and claim they filed several amended Schedules throughout the bankruptcy proceeding to address missing information and testified that they had no intention to omit information.

The Trustee also contends Debtors should be denied a discharge pursuant to §727(a)(2)(A) for transferring the proceeds from the sale of the Commercial Property to benefit Gibbs Company and RKC, within one year before they filed their bankruptcy petition, in an attempt to hinder, delay or defraud creditors and the Chapter 7 trustee. The Trustee also asserts that Debtors should be denied a discharge under §727(a)(2)(B) for conducting the auction of estate property and transferring the proceeds after the petition date with the intent to hinder, delay or defraud creditors and the Chapter 7 trustee. Debtors denied intentionally transferring property for an improper purpose.

## II. LEGAL ANALYSIS

### A. General Principles and Burden of Proof

Obtaining a discharge is the key component of the "fresh start" a bankruptcy proceeding is designed to give a debtor. Accordingly, denying a discharge to a debtor is considered to be a "harsh and drastic penalty." *American Bank of Spikard-Trenton v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n. 1 (Bankr. W.D. Mo.1985). For that reason, the grounds for denial of discharge listed in § 727 are strictly construed in the favor of the debtor. *Florte L.L.C., et al v. Sendecky (In re Sendecky)*, 283 B.R. 760, 765 (B.A.P. 8th Cir.2002); *Gray v. Gray (In re Gray)*, 295 B.R. 338, 343 (Bankr. W.D. Mo.2003); *In re Stanke*, 234 B.R. 449, 456 (Bankr. W.D. Mo.1999). A creditor requesting that the court deny a debtor a discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *Sendecky*, 283 B.R. at 763; *Gray*, 295 B.R. at 343; *Kirchner v. Kirchner (In re Kirchner)*, 206 B.R. 965, 973 (Bankr.

4

W.D. Mo.1997).

### B. §727(a)(4)(A): False Oath or Account

The U.S. Trustee asserts that Debtors are not entitled to a discharge under 11 U.S.C. § 727(a)(4)(A), which states that the "court shall grant the debtor a discharge, unless ... (4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A). In order to establish a false oath under § 727(a)(4)(A), the U.S. Trustee is required to prove that (1) Debtor made a statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case." *In re Freese,* 460 B.R. 733, 738 (8th Cir. BAP 2011) (quoting *In re Juehring,* 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005)). Debtors admit the omissions and misstatements were made and were under oath, but deny that they knew they were false, made the statements with fraudulent intent, and that all the statements were material.

The Debtors' signatures on the Petition, the Schedules of Assets and Liabilities and Statement of Financial Affairs, verified and made under penalty of perjury pursuant to Rule 1008, are declarations which have the force and effect of oaths of the kind encompassed by the discharge exception for making a false oath. *In re Bren*, 303 B.R. 610, 613 (B.A.P. 8th Cir. 2004), *rev'd on other grounds*, 122 Fed. Appx. 285 (8th Cir. 2005). A debtor's omission of assets from his bankruptcy schedules or statement of financial affairs may constitute a false oath under §727(a)(4)(A). *In re Davison,* 296 B.R. 841, 847 (Bankr. D. Kan. 2003).

"[F]raudulent intent may be established by circumstantial evidence." *In re Charles,* 474 B.R. 680, 684 (8th Cir. BAP 2012). "Statements made by a debtor in his verified petition,

5

schedules, and statements and during the meeting of creditors are made under oath." *In re Rohde,* 400 B.R. 230, 235 (Bankr.N.D.Iowa 2009). Again, the "determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor or the debtors...." *In re Phillips,* 476 Fed.Appx. 813, 816 (11th Cir. 2012). Since an admission or other direct evidence of fraudulent intent is rarely available, actual intent may be established by circumstantial evidence. *Gray*, 295 B.R. at 343; *Weese v. Lambert (In re Lambert)*, 280 B.R. 463, 468 (Bankr. W.D. Mo.2002). "A debtor's subsequent disclosure of an asset does not absolve a debtor from an initial omission, but depending on the circumstances, it may be evidence of innocent intent." *Ellsworth v. Bauder (In re Bauder)*, 333 B.R. 828, 831 (8th Cir. BAP 2005) (footnote omitted).

The Trustee argues that the Debtor's false statements made under oath were done with a fraudulent intent. He points to several circumstances that, to him, show a reckless disregard of the truth, the functional equivalent of a fraudulent intent under § 727(a)(4)(A). The Trustee contends that Debtors intentionally made numerous, material representations that constitute a false oath or account by: (1) failing to disclose in their Schedules personally owned assets that were sold at auction post-petition; (2) failing to disclose the UCU account; (3) failing to disclose transfers for the benefit of the Gibbs Company; and (4) making false statements at the meeting of creditors.

Mr. Gibbs testified that they had transferred all titled property to Gibbs Company in 2017[2] and that all auction proceeds and property sold were disclosed either on amended schedules or at

---

2 The Trustee presented evidence that Debtors included that same titled property on their 2019 Schedule C personal tax return for a depreciation deduction. However, the certificates of title show that the vehicles were transferred to Gibbs Co. in 2017. Further, Mr. Gibbs testified that their CPA made a mistake including those vehicles on the 2019 tax return and once they learned of the errors the 2019 tax returns were corrected.

the 341 meeting. On their initial Schedules Debtors listed "tools and equipment" valued at $108,000 which was the amount for which the tools and equipment sold at auction. Mr. Gibbs also testified that he believed it was in the best interest of the company and its creditors to conduct the auction and use the proceeds to pay the creditors. The Chapter 7 trustee and Mr. Gibbs testified that they disclosed they had deposited the $108,000 in auction proceeds into the savings account at the 341 hearing. The trustee also testified that Mr. Gibbs stated at the 341 hearing that the auction sale included property owned by Gibbs Co. and/or Randy and Kathy Gibbs.

Debtors point out that they did disclose the correct account number for the UCU account on their initial Schedules but inadvertently labeled it with the wrong account name. They also disclosed the correct account name at the meeting of creditors and in amended Schedules, albeit delayed. Mr. Gibbs testified that he had no intention to hide the existence of the account and that if he had he wouldn't have disclosed the account number and balance on the Schedules. The Chapter 7 trustee admitted at trial that the account number and petition date balance provided on the Schedules provided her notice to look into the account and she could have determined the correct bank name. Further, it was not a material omission as it was disclosed at the creditors meeting shortly after the Schedules were filed.

The Trustee complains that Debtors did not correctly disclose the payment of a portion of the Commercial Property sale proceeds to a loan on which Gibbs Company was a co-debtor. Debtors did reveal a payment of $388,000 mortgage lien payoff in Question 18 of the Statement of Financial Affairs. However, they did not reveal specifically in Question 8 that the payoff benefitted another entity or insider. Although this should have also been specifically noted on

7

Question 18, the information provided in response to Question 8 put the Chapter 7 trustee on notice of the information and the ability to confirm what lien those proceeds paid. After questioning at the meeting of creditors, Debtors amended their Schedules to include omitted vehicles and personal property and correct the bank account name. At trial, the Chapter 7 trustee testified that Debtors disclosed that the RKC account had proceeds from the sale of the commercial property personally owned by Debtors. Mr. Gibbs testified that they deposited the funds into the RKC account because they were unsure which account to place them and RKC had operated the mini-storage units on the Commercial Property. He stated that their intent was to hold the funds for the Chapter 7 trustee.

The Trustee raises several specific items that were not disclosed in initial Schedules and argues that the multiple amended Schedules and Statements of Financial Affairs shows a pattern of recklessness. While the Court does not appreciate the sloppiness of Debtors and Debtors' counsel's preparation of the Schedules and SOFAs, the Court does realize that in a case of this complexity amended disclosures can be necessary. Based on the evidence presented and as discussed above, the Court is convinced that Debtors did not knowingly and fraudulently omit information from their Schedules or Statements of Financial Affairs. The Debtors and the Chapter 7 trustee testified that disclosures were made at the 341 hearing and in subsequent amended Schedules and SOFAs.

The Court finds Debtors' explanations reasonable and credible. Here, the circumstances of the complexity of the multiple business entities and bank accounts along with Debtors subsequent disclosure at the 341 meeting and amended Schedules supports a lack of fraudulent intent to omit the information or make a false oath. Although the disclosures were imperfect and

8

Case 20-02007-drd    Doc 96    Filed 04/13/22    Entered 04/13/22 13:50:37    Desc Main
Document      Page 9 of 14

came in stages, Debtors would not have disclosed the equipment value and bank account number on their Schedules nor the information regarding the auction property and proceeds at the 341 meeting if they had fraudulently intended to make a false oath. There is insufficient evidence in the record to support a finding that denial of a discharge is warranted under §727(a)(4)(A).

### C.   §727(a)(2)(A): Transfer or Concealment With Intent to Hinder, Delay or Defraud Creditors Within One Year of Petition Date

11 U.S.C § 727(a)(2)(A) provides that the court shall grant the debtor a discharge, unless "[t]he debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed— property of the debtor, within one year before the date of the filing of the petition." To prevail on a § 727(a)(2)(A) complaint, the Trustee must prove each of four elements by a preponderance of the evidence:

(1) The wrongful action occurred within 1 year before the petition filing;

(2) The act was committed by the debtor;

(3) The debtor had actual intent to hinder, delay, or defraud a creditor or officer of the estate; and

(4) The debtor's action consisted of transferring, removing, destroying, or concealing the debtor's property.

*In re Korte,* 262 B.R. 464 (8th Cir. BAP 2001).

Actual, subjective intent to hinder, delay or defraud must be demonstrated as a prerequisite to denial of discharge. *McCormick v. Security State Bank*, 822 F.2d 806, 808 (8th Cir.1987); *Stanke*, 234 B.R. at 457; *Diamond Bank v. Carter (In re Carter)*, 203 B.R. 697, 706

(Bankr.W.D. Mo.1996); *In re Berry*, 37 B.R. 44, 46 (Bankr. W.D. Mo.1983).

Factors considered when determining whether the debtor acted with actual intent include: lack or inadequacy of consideration; family, friendship, or other close relationship between transferor and transferee; retention of possession, benefit or use of property in question; financial condition of the transferor prior to and after the transaction; conveyance of all of debtor's property; secrecy of conveyance; existence of trust or trust relationship; existence or cumulative effect of pattern or series of transactions or course of conduct after pendency or threat of suit; instrument affecting the transfer suspiciously states it is bona fide; debtor makes voluntary gift to family member; and general chronology of events and transactions under inquiry. *Riley v. Riley* (*In re Riley*), 305 B.R. 873, 878–79 (Bankr.W.D.Mo.2004).

On November 11, 2019, Debtors sold Commercial Property owned by them in their individual capacities for $525,000. The sale closed two weeks prior to the bankruptcy filing for $520,000 due to forfeiture of a $5,000 escrow amount. A payoff in the amount of $388,000 was made to Central Bank on a loan on which Gibbs Company was the debtor and Randy and Kathy Gibbs, individually, were guarantors. The balance of $132,007.40 was deposited by Debtors into a Landmark Bank account held by RKC. The Trustee asserts that the pay off on the Gibbs Company loan and the deposit of funds into a RKC account benefitted an insider corporation with no consideration being provided.

Debtors argue that a transfer never actually occurred because Debtors never lost control of the funds as they remained in complete control of the funds deposited in the RKC account. The Gibbs Company and RKC, however, were separate legal entities so Debtors individually did not control the funds.

10

However, the Court need not determine the transfer element and will focus on the element of whether Debtors' had the requisite intent to hinder, delay or defraud a creditor or officer of the estate. The testimony shows that Debtors thought payoff of the loan was required upon the sale of the Commercial Property and that the sale of the Commercial Property could not have occurred without the pay off of Central Bank's loan so Debtors had no choice but to pay off the Gibbs Company loan from the proceeds. The Chapter 7 trustee had notice of the payoff of the loan and could have sought to avoid that payment if so warranted. As noted by Debtors, Central Bank gave full and adequate consideration by releasing its lien and that any benefit to Gibbs Co. by the making of the loan would have occurred years prior and been in the nature of a capital contribution by Debtors.

As to the deposit of the funds into the RKC account, testimony shows that Mr. Gibbs thought the RKC account made the most sense to deposit the funds into because RKC was the operating entity of the Commercial Property (mini-storage business). He testified that his intent in depositing the funds into the RKC account was to preserve them for the Chapter 7 trustee and they simply were unclear exactly where to deposit the proceeds at that point. Debtors did disclose to the Chapter 7 trustee at the 341 meeting the existence of the sale proceeds and what was done with the amount used to pay off the Gibbs Company loan and that the balance was deposited into the RKC account. Mr. Gibbs testified that he thought the funds should be used to pay off the Gibbs Co. loan because he and Mrs. Gibbs were personal guarantors on the loan. He testified that his intent was to hold the funds for the Chapter 7 trustee because he knew she would need the funds in order for them to retain their home. The Trustee argues that this is evidence Mr. Gibbs had a nefarious intent to hold the funds as leverage in negotiations, but the Court

11

believes the testimony supports a finding that Debtors intended to hold the funds in the account for the Chapter 7 trustee and did in fact turn them over to her. The Court does acknowledge that Debtors waited for an order of the Court to turn the funds over but availing themselves of legal avenues available to them does not evidence a fraudulent intent.

As noted above, the Chapter 7 trustee testified that Debtors disclosed to her that the proceeds from the sale of the Commercial Property had been deposited in the RKC account and that they also provided the information on the initial SOFA that would have put her on notice of the existence of the funds. Whether these assumptions by the Debtors were correct or not, the evidence supports a conclusion that Debtors did not have the necessary fraudulent intent to prove § 727(a)(2)(A) by a preponderance of the evidence.

### D. §727(a)(2)(B): Transfer or Concealment With Intent to Hinder, Delay or Defraud Creditors After Date of Filing Petition

11 U.S.C. § 727(a)(2)(B) provides that the court shall grant the debtor a discharge unless the debtor "with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed— property of the estate, after the date of the filing of the petition." The elements of § 727(a)(2)(B) are the same as those under § 727(a)(2)(A), except that the wrongful action must occur post-petition. *See In re Darr,* 472 B.R. 888, 894 (Bankr. E.D. Mo. 2012).

The Trustee asserts that a portion of the estate property, including several vehicles, was sold at the auction that occurred four days post-petition and that Debtors' transfer of estate property and their attempt to conceal the transfer was done with the requisite intent. In fact,

Debtors do not deny that they included a Mustang car, a dump truck, a trailer, a pick up truck that he mistakenly believed was titled with Gibbs Co, and items from the storage units in the post-petition auction. The Mustang, dump truck and trailer were listed on the initial Schedules. The Chapter 7 trustee testified that at the 341 meeting, Debtors told her that there had been an auction and that both property of Gibbs Co. and/or Randy and Kathy Gibbs had been sold. She also testified that they informed her the proceeds had been deposited into a savings account. Mr. Gibbs testified that he arranged with the auction company for a liquidation of certain Gibbs Co. assets and equipment with the intent to liquidate the company assets to try and refund customer deposits. He further testified that it was a mistake to include the Mustang and the dump truck since they were personal property but that he had been trying to sell the items for some time and thought the auction would be a better platform to turn those items into cash for the Chapter 7 trustee. He also testified that he spoke with an auction company employee about pulling the personal items from the auction but was told he could not do that at that point. He admitted he did not specifically tell the auction employee that they had filed bankruptcy. He testified that his intent was to realize as much cash as possible to have to turn over to the Chapter 7 trustee in the hopes of being able to retain their home through a settlement agreement.[3]

The severe and extreme nature of a denial of discharge forces courts to strictly and narrowly construe the provisions of § 727 in favor of a debtor. *Kaler v. Charles (In re Charles)*, 474 B.R. 680, 683 (8th Cir. BAP 2012) (citation omitted). Debtors' testimony evidences a lack

---

[3] The Trustee also notes that Debtors sold two ATVs post-petition for $100 each without the Chapter 7 trustee having the opportunity to inspect them for value. Mr. Gibbs testified that the ATVs were sold as scrap value and that Debtors still have the cash on hand. This is a de minimus amount and no evidence was presented that the ATVs were worth more than the scrap value at which they were sold.

13

of fraudulent intent in the selling of personal property at the auction and in depositing the funds into a savings account. Both the Chapter 7 trustee and the Debtors testified that they disclosed the auction and the personal items sold at the 341 meeting. Debtors' explanation for including the car, trucks, trailer and storage unit items in the auction is reasonably credible and supports an inference of non-fraudulent intent. While not how estate property should be handled by a debtor post-petition, the Court does not believe such action rises to the level warranting the denial of a discharge. For those reasons, and strictly and narrowly construing § 727(a)(2)(B) in favor of the Debtor, the Trustee has failed to carry his burden. Thus, his § 727(a)(2)(B) claim also fails.

### III.  CONCLUSION

For the reasons stated above, the Trustee's request for relief under 11 U.S.C. §§727(a)(2)(A), (a)(2)(B) and (a)(4) is hereby denied. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.


ENTERED this 13th day of April 2022.

/s/ Dennis R. Dow
United States Bankruptcy Judge